UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DORMAN J. DAVIS                                                                          PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:19-CV-848-KHJ-FKB

ENTERGY UTILITY ENTERPRISES,
INC. f/k/a ENTERGY MISSISSIPPI, INC.                                                     DEFENDANT

ORDER

This action is before the Court on Defendant Entergy Utility Enterprises, Inc.'s ("Entergy") Motion for Summary Judgment [71]. For the following reasons, the Court grants in part and denies in part the motion.[1]

I.   Facts and Procedural History

This case arises from Plaintiff Dorman Davis's employment with Entergy. Compl. [1] ¶ 3.14; Memo in Supp. of Mot. Summ. J. [72] at 9. Davis started working at Entergy[2] in 2007, after working for the Mississippi Public Utilities staff and the Mississippi Public Service Commission ("MPSC"). Decl. of Grenfell [71-1] ¶4; Decl. of Davis [82] ¶ 3. During his tenure, Davis worked underneath Bob Grenfell, Vice President of Regulatory Affairs. Resp. Memo. [80] at 1; [71-1] ¶¶2–3. For many years, Davis performed well in his role as Manager of Regulatory Affairs. *See* [72] at

---

[1] The Court did not consider Ashlee Hardy's Declaration and its accompanying addenda [71-20] in evaluating this Motion for Summary Judgment. Accordingly, the Motion to Strike Evidence Concerning Casinos [75] is denied as moot.
[2] At times relevant to this suit, the corporation went by the name Entergy Mississippi, Inc.

1; [80] at 1. Around 2013, Davis experienced problems in his personal life, and Grenfell accommodated his need to miss work. [71-1] ¶ 5; Decl. of Bass [71-7] at 2. In 2014, Davis's wife filed for divorce. Divorce Compl. [71-4]. After this, Davis claims to have suffered through several "personal problems." *See* [80] at 6. The parties dispute the remaining facts.

Grenfell claims Davis was unengaged at work. [71-1] ¶ 5. Because of Davis's absence, several co-workers claim they performed Davis's duties during this time and their own work suffered. Decl. of Vanderloo [71-3] ¶¶4–6; Decl. of Reel [71-5] ¶ 6; [71-7] ¶¶ 6–8; Decl. of Heard [71-8] ¶ 7; Decl. of Turnipseed [71-10] ¶¶ 3–4. Davis insists that the true cause of his co-workers doing more work was not his absence but Entergy's transfer of his duties to others, particularly Shelly Bass, with the intent to terminate Davis's employment. *See* Depo. of Davis [82-5] at 4. He also claims that Entergy withheld information from him to make him look unproductive. *Id.* at 5.

In 2016, Grenfell placed Davis on a Performance Improvement Plan ("PIP"), which noted his "lack of reliability to be present and engaged," "lack of effective communication," and him "inconsisten[tly] reporting to work on a full-time basis." 2016 PIP [71-13] at 1; [71-1] ¶ 7; *see also* Depo of Fisackerly [82-1] at 19.[3] Grenfell removed Davis from the 2016 PIP after Davis improved his performance, but considered reissuing another PIP in 2017 for the previous reasons. [71-1] 8–9.

---

[3] The Court cites to page numbers assigned by CM/ECF.

2

In June 2017, Davis sent a letter to Entergy, stating that changes at Entergy "have gradually led [Davis] to the belief that there is a desire . . . to phase out his employment and/or his position." Akers Letter [71-15] at 2. Davis's letter contended, "he [was] no longer allowed to attend internal meetings," "access data," or "meet with members or staff of the Mississippi Public Service Commission." *Id.* He also claimed much younger employees were handling his duties. *Id.* Davis offered to renegotiate his contract with new provisions like severance pay, a contractor position, or guaranteed long-term employment. *Id.* at 3.

Entergy responded to Davis's letter, explaining that he was part of a team and "the successes of the team result from the efforts of numerous skilled and competent professionals many of whom . . . perform critical work for which [Davis] was responsible but failed." Masinter Letter [71-17] at 1. The letter documented Davis's poor performance and countered his assertions. *Id.* at 1–2. Entergy rejected Davis's options to renegotiate his at-will employment and stressed that it expected him to "report to work as scheduled, remain in the office throughout the normal workday, . . . and otherwise meet the expectations of his manager role." *Id.* at 2.

Grenfell placed Davis on another PIP in August 2017 for his "sporadic and unreliable" performance, lack of communication and participation in the regulatory process, and absenteeism. *See* 2017 PIP [71-18] at 2. The PIP required Davis to take corrective action, such as advance approval of time off and mandatory attendance at all his scheduled team meetings. *Id.* at 4. This PIP also tasked him with "developing a financial model to predict regulatory results," which Davis claims was impossible

3

and beyond the capability of available software. [82] ¶ 13. The parties disagree whether Grenfell met with Davis over the coming months and documented Davis's noncompliance. *See* [71-18] at 5–6; [82-5] at 12 (stating Grenfell tried to get Davis to sign fraudulent records of their performance review meetings).

In November 2017, Davis filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of sex and age and retaliation for his June 2017 letter. EEOC Charge [1-2]. In December 2017, Davis refused to sign an MPSC-required audit report because he believed it contained misrepresentations about the costs of coal and replacement energy. *See* [82-5] at 21–32. Davis insists his refusal to sign upset Grenfell and "accelerated his departure" from the company. *Id.* at 58–59. In February 2018, Davis also questioned the depreciation calculations in Entergy's "formula rate plan," an error Davis claims could not be approved without an MPSC order. *Id.* at 20–21, 34. That same day, Entergy CEO Fisackerly and Grenfell terminated Davis's employment. [80] at 46; [72] at 9. Davis believes Entergy terminated him in retaliation for filing his charge, reporting the errors, and for refusing to participate in fraudulent activity. [80] at 28, 36.

Davis amended his charge in April 2018. Amend. Charge [1-3]. He received his right to sue letter in 2019 and sued soon after. [1] at 10. Davis states claims of sex discrimination under Title VII of the Civil Rights Act of 1964; age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA");

4

retaliation under Title VII and the ADEA; and state claims of wrongful discharge and infliction of emotional distress. [1] ¶¶ 4.1–6.1.

II. Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Levy Gardens Partners 2007, L.P. v. Commw. Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013) (citation omitted). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In analyzing a motion for summary judgment, "the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

III.  Analysis

Entergy moves for summary judgment on all claims. Entergy also asks the Court to limit Davis's compensatory damages and deny punitive damages. [71]; [72] at 24–26. The Court addresses each claim in turn.

    A.  Disparate Treatment Claims — Title VII and ADEA

In the employment context, "[t]o succeed on a claim of intentional discrimination . . . a plaintiff must first prove a prima facie case of discrimination." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). In discrimination cases, plaintiffs may present a prima facie case either by direct evidence or by circumstantial evidence using the *McDonnell Douglas* analysis. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (Title VII); *Evans v. Houston*, 246 F.3d 344, 350 (5th Cir. 2001) (ADEA). Davis proceeds with the latter—circumstantial evidence. So Davis can establish a prima facie case for employment discrimination by showing that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) . . . suffered some adverse employment action by the employer; and (4) . . . was treated less favorably than other similarly situated employees outside the protected group." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).

        1.  Sex Discrimination

Entergy argues Davis does not identify an adverse employment action except for his termination. [72] at 11–12. Entergy further contends Davis does not show

that Entergy's proffered reason for termination—his excessive absence and failure to perform his duties—is pretextual. *Id.* at 12–14. Davis does not respond to these arguments.

Adverse employment actions for purposes of Title VII discrimination include only "ultimate employment decisions" such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559. The "loss of some job responsibilities" is not an adverse employment action unless it is significant and material. *Thompson v. City of Waco*, 764 F.3d 500, 504 (5th Cir. 2014) (citations omitted). Along with firing him, Davis argues that Entergy "stripped" him of responsibilities, barred his group from speaking to the public utilities staff without permission, prevented him from attending meetings, and limited his ability to obtain documents necessary to do his job. *See* [80] at 24–26.

Viewing the facts in the light most favorable to Davis, none of the alleged actions, other than termination, amount to an adverse employment action. Davis admits that his job largely involved a team effort. *See, e.g.*, [80] at 5. When describing his stripped responsibilities, Davis only mentions moving his responsibilities to other persons on or working with his team like Shelly Bass. *See id.* at 24. He does not contend that, before he was terminated, Entergy removed him as team lead, nor does he cite any evidence that his pay decreased. He also does not describe what specific duties he lost or when the reallocation occurred. Nothing suggests this shift in duties was significant. As for Davis's prevention from attending meetings, speaking to Mississippi Public Utilities staff, and accessing

7

documents, Davis does not say who authorized these adverse actions or how they occurred. *See, e.g., id.* at 26. But these actions are not "ultimate employment decisions" and do not qualify as adverse employment actions.

Davis' sex discrimination claim also fails because he does not show that he "was replaced by someone outside the protected class." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). Davis cites no evidence in the record of his replacement. And Shelly Bass, the employee Davis often references as taking his duties, left the company months before Entergy fired Davis. [71-7] ¶ 12. The other team members who took his responsibilities included both men and women. *See, e.g.,* [71-3] ¶ 5 (Allen Heard, Lea Turnipseed, Shelly Bass, and Jeremy Vanderloo). Without information on his replacement or a comparator, Davis does not present a prima facie case of sex discrimination.

### 2. Age Discrimination

To be a member of a protected group under the ADEA, the plaintiff must show that he is at least 40 years old. 29 U.S.C. § 631. In the age discrimination context, the fourth element of *McDonnell Douglas* requires the plaintiff to either be "i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Goudeau v. Nat'l Oilwell Varco, L.P.,* 793 F.3d 470, 474 (5th Cir. 2015) (citation omitted). If the plaintiff makes a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for termination," after which the plaintiff must show the reason is a pretext for discrimination. *McMichael v. Transocean Offshore*

*Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019) (citations omitted). Plaintiffs must rebut every nondiscriminatory reason articulated by the employer by providing either evidence of disparate treatment or by showing the reasons themselves are false. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citations omitted).

It is uncontested that Davis is over 40. *See* [72] at 14 (Davis was 59). And as mentioned above, Davis's termination qualifies as an adverse employment action. *See supra* III.A.1. But much like his sex discrimination claim, Davis cites no evidence that someone younger replaced him or that Entergy discharged him because of his age. Even if the co-workers who assumed Davis's duties qualify as replacements, Davis provides no evidence of their individual ages outside of general statements that they were younger.

And Davis has not shown that Entergy's proffered reason for termination is pretext for age discrimination. Entergy claims to have fired Davis for his excessive absence and failure to perform his duties. [72] at 12–14. Among these failures was Davis's poor relationship and communication with his team and other individuals. *See, e.g.*, [71-13]; [71-18]; [72] at 5. Davis disagrees, providing testimony that his failure to perform duties resulted from transferring them to other team members and inhibiting him from doing so. *See, e.g.*, [80] at 24; [82-5] at 14. He also argues that Entergy tolerated violations of its absentee policies. *See* [82-5] at 56.

Yet Davis must refute every discrete, nondiscriminatory reason offered. *See Laxton*, 333 F.3d at 578 (citations omitted). Though Davis testifies that Entergy did

not strictly enforce the attendance policy, he admits that Grenfell generally permitted late arrivals and early departure only "within reason." [82-5] at 10. During a period where Davis's superior told him to remain in the office throughout the workday, his badge records often show him tardy. *See* Badge Access Records [71-19]. And Davis does not contest the record's accuracy. *See* [82-5] at 16. Davis also neglects to address the discord he had with his team. Entergy provides unrebutted evidence of co-workers and team-members who had poor relationships with Davis and claim to have suffered under his management. *See, e.g.*, [71-10] ¶ 5.

Further, no evidence supports a conclusion the proffered reasons were pretext for age discrimination. *See Laxton*, 333 F.3d at 578 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).[4] Not only does Davis fail to show the proffered reasons are false, but he also provides no probative evidence of discriminatory motive. Indeed, the record suggests otherwise. Grenfell, a 64-year-old male, both hired and fired Davis; Fisackerly, a 53-year-old male, was also involved with Davis's termination. There is an inference that discrimination is not the motive where the individual who allegedly discriminated is the same person who hired the plaintiff. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). Further, "[t]he fact that the actor involved in both employment decisions is also a member of the protected class only enhances the inference." *Id.* (citation

---

[4] While the Supreme Court in *Reeves* emphasized that a prima facie case paired with a showing of pretext often creates an inference of discrimination, it stated that there are still times when no rational factfinder could find the action discriminatory. 530 U.S. at 148. Courts generally look to "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Id.* at 148–49.

omitted). This "same-actor inference" applies here. Davis therefore does not establish the proffered reason was pretext for age discrimination.

Because Davis does not state a prima facie case of discrimination and cannot establish pretext for age discrimination, Entergy is entitled to summary judgment on Davis's disparate treatment claims.

### B. Hostile Work Environment — Title VII and ADEA

To state a claim for a hostile work environment under Title VII, a plaintiff must show:

> (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Woods v. Delta Bev. Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). Similar elements exist for age under the ADEA. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).

Davis cites no evidence suggesting that his harassment was based on his sex or age. Davis does not show that "but for the fact of [his] sex [or age], [he] would not have been the object of harassment." *Heath v. Elaasar*, 763 F. App'x. 351, 354 (5th Cir. 2019). While Davis provides testimony on how Entergy tried to "push him out," nothing suggests his age or sex motivated Entergy. For this reason, the Court grants Entergy summary judgment on Davis's hostile work environment claims.

11

C. Retaliation Claims — Title VII and ADEA

Title VII and the ADEA make it unlawful to discriminate against an individual "because he has made a charge" with the EEOC. 42 U.S.C. § 2000e-3; 29 U.S.C. § 623(d). To state a prima facie retaliation claim, a plaintiff must show (1) he engaged in protected activity; (2) the employer took a materially adverse action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). Materially adverse actions, for retaliation under Title VII and the ADEA, must "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019). Causal connections can exist when evidence shows that "the employer's decision to terminate was based in part on knowledge of the protected activity." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019) (citation omitted). When a plaintiff establishes a prima facie retaliation case, the *McDonnell Douglas* burden-shifting framework applies. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

Davis engaged in protected activity by filing his original charge on November 20, 2017. [1-2]. Entergy terminated Davis's employment on February 26, 2018. [80] at 53. This three-months temporal proximity is close enough to establish a causal connection for purposes of a prima facie case. *See Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 243 (5th Cir. 2019). Entergy's proffered reason for terminating his employment was excessive absences and failure to perform.

But once again, Davis fails to show pretext. Davis relies only on the temporal proximity of his termination to his EEOC charge-filing as well as Grenfell's allegedly fraudulent conduct in conducting his 2017 PIP review to set him up for termination. [80] at 53. Davis's deposition, however, reflects that Grenfell's alleged fraudulent conduct occurred before the EEOC filing. [82-5] at 54 (November 17th, 2017). And while temporal proximity can establish a prima facie case, the Fifth Circuit "affirmatively reject[s] the notion that temporal proximity standing alone can be sufficient proof of but for causation" at the pretext stage. *Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 807–08 (5th Cir. 2007). Without evidence of pretext, Davis cannot prove a case under Title VII or the ADEA. The Court grants Entergy summary judgment on this claim.

    D. Inflicition of Emotional Distress

Entergy moves for summary judgment on Davis's claim for infliction of emotional distress, arguing that the Mississippi Worker's Compensation Act ("MWCA") bars negligent infliction of emotional distress ("NIED") claims and that Davis does not allege conduct outrageous enough to support an intentional infliction of emotional distress claim ("IIED"). [72] at 23. Entergy is correct that the MWCA's exclusivity provisions require a plaintiff to allege actions "beyond negligence, gross negligence, or recklessness" to pursue a tort claim against an employer. *Spiers v. Oak Grove Credit, LLC*, 328 So. 3d 645, 653 (Miss. 2021) (citation omitted); Miss. Code Ann. §71-3-9. Likewise, Davis does not allege Entergy's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013). "Damages for [IIED] are usually not recoverable in mere employment disputes." *Spiers*, 328 So. 3d at 653 (citation omitted). Entergy's alleged fabrication of false grounds for termination may be wrongful, but absent extreme facts, Davis does not state an IIED claim. The Court grants summary judgment to Entergy on Davis's infliction of emotional distress claims.

### E. Wrongful Discharge

Mississippi law recognizes an action in tort for wrongful discharge in violation of public policy. *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993). To state a claim, Davis must show he was terminated because he either "1) refused to participate in illegal activity, or 2) reported the illegal activity of his employer to the employer or anyone else." *Hust v. Forrest Gen. Hosp.*, 762 So. 2d 298, 301 (Miss. 2000) (citing *McArn*, 626 So. 2d. at 606–07). Wrongful discharge "does not require that a crime has already been committed, but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties." *Roop v. S Pharms. Corp.*, 188 So. 3d 1179, 1185 (Miss. 2016) (quoting *Hammons v. Fleetwood Homes of Miss. Inc.*, 907 So. 2d 357, 360 (Miss. Ct. App. 2004)).

Davis contends that Entergy terminated his employment in response to (1) him reporting or refusing to sign a fraudulent audit letter, and (2) his statements about depreciation estimates. [80] 23–50. Entergy moves for summary judgment on

Davis's wrongful discharge claim, arguing that Davis's retaliation occurred after his alleged reporting; Davis's refusal to sign the audit letter and statements about the depreciation were not "reports of fraud" or "refusals to engage in fraudulent activity"; Entergy never engaged in criminal activity; and Fisackerly and Grenfell made the decision to terminate Davis's employment without regard to these actions. *See* Rebuttal [86] at 6–10. It is undisputed that Entergy terminated Davis's employment. Davis must provide evidence creating a genuine dispute over whether Entergy did so because of Davis's refusal to participate in illegal activity or because he reported such activity to his superiors.

Davis has met this burden. To start, he provides testimony that Entergy included incorrect calculations of replacement costs and misrepresented the scope of outages to the MPSC. *See, e.g.*, [82-5] at 38 ("Based on my discussion with Shelly Bass and overhearing some conversations on the telephone, they had a substantial effort to prevent regulators from understanding the scope of outages."). Davis also further provides testimony that he reported to Grenfell that the 2018 FRP filing contained intentionally misleading information to the MPSC on depreciations related to one of their facilities. *See, e.g., id.* at 47. Mississippi law states:

> Any person who . . . knowingly or intentionally makes false reports to the [MPSC], when the . . . reports are required by . . . any lawful order or rule of the [MPSC], or . . . makes any false entries upon the books or records of any public utility subject to review by the [MPSC], or . . . makes or preserves any false or misleading vouchers, memoranda or records showing the nature of, or purpose for, the disbursement of funds of such public utilities, shall be deemed guilty of a felony.

15

Miss. Code Ann. § 77-3-81. Davis alleges that Entergy's conduct was unlawful once completed. His reporting of and refusal to take part in such actions are protected acts under Mississippi common law.

Finally, Davis provides evidence showing Grenfell was aware of Davis's complaints and that Davis's refusal or report motivated his termination. *See, e.g.*, Email to Grenfell [82-10]; [82-5] at 58–59. Because there are genuine issues of fact as to whether Entergy' reports were fraudulent and whether Grenfell and Fisackerly terminated Davis because of protected actions, the Court denies summary judgment on Davis's wrongful discharge claim.

### F. Compensatory Damages

As for Davis's request for damages, Entergy argues that (1) Davis's claim for front and back pay assumes his salary plus bonus is $200,000, an amount larger than Davis ever made; (2) Davis's method of calculating lost benefits is improper and overestimates actual damages; (3) Davis has no right to front pay; and (4) Davis "double-dips" by seeking damages for lost earning capacity along with his front pay. [72] at 24–25.

Wrongful discharge claims are not contractual claims but independent tort-based actions. *See Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 220 (Miss. 2015). Available in tort actions, "[c]ompensatory damages are such damages as will compensate the injured party for the injury sustained, and nothing more." *Parsons v. Walters*, 297 So. 3d 250, 259 (Miss. 2020) (citation and internal quotation marks omitted). A successful plaintiff is entitled to all damages he can prove with

*reasonable certainty. Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736, 740 (Miss. 1999) (emphasis added).

While Entergy provides evidence of Davis's salary and points to the fact that Davis relies on estimates, there are still outstanding questions of fact including, Davis's entitlement to a bonus, his actual earnings following termination and other efforts to mitigate, how long Davis would have worked, and the extent Davis suffered a decrease in his earning potential. Also, liability still is to be determined, and Davis requests other non-economic damages. These questions "are computations that juries are more than capable of performing themselves, with proper instruction." *Robinson v. Colucci*, No. 3:16-CV-687-TSL-RHW, 2018 WL 2025861, at *8 (S.D. Miss. May 1, 2018). The Court finds it premature to rule on compensatory damages and denies summary judgment.

G.  Punitive Damages

Lastly, Entergy moves for summary judgment holding punitive damages are unavailable in this case. [72] at 26. "Discharge in retaliation for an employee's good faith effort to protect the employer from wrongdoing constitutes an independent tort and may support punitive damages." *DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 357 (Miss. 2008). Should Davis prove wrongful discharge, a reasonable hypothetical juror could find malice or reckless disregard for the rights of Davis. *See id.* at 356 (quoting *Willard v. Paracelsus Health Care Corp.*, 681 So. 2d 539, 543 (Miss. 1996). The Court denies summary judgment.

IV. Conclusion

The Court has considered all the arguments set forth by the parties. Those arguments not addressed would not have changed the outcome of the Court's decision. For these reasons, the Court GRANTS IN PART and DENIES IN PART Entergy's Motion for Summary Judgment [71]. The Court grants Entergy's motion as to Davis's discrimination claims under Title VII and the ADEA, his retaliation claims under the same, and his state infliction of emotional distress claims. The Court DISMISSES Davis's Title VII and ADEA claims and Davis's state NIED and IIED claims.

Finding genuine issues of material fact exist as to Davis's remaining wrongful discharge claim, the Court denies summary judgment on this claim and related requests for damages.

The Court further DENIES AS MOOT Davis's Motion to Strike Evidence Concerning Casinos [75].

SO ORDERED AND ADJUDGED this the 24th day of June, 2022.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE